## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **Thogus Products Company,** | **Case No. 1:20cv1887** |
| **Plaintiff,** | |
| **-vs-** | **JUDGE PAMELA A. BARKER** |
| **Bleep, LLC,** | **MEMORANDUM OPINION AND ORDER** |
| **Defendant** | |

Currently pending is Defendant Bleep, LLC's Motion to Quash or, in the Alternative, for Protective Order.  (Doc. No. 32.)  Plaintiff Thogus Products Company filed a Brief in Opposition on February 26, 2021, to which Defendant replied on March 2, 2021.  (Doc. Nos. 36, 37.)  For the following reasons, Defendant's Motion is GRANTED as set forth herein.

## I.      Background

On July 20, 2020, Plaintiff Thogus Products Company ("Thogus") filed a Complaint against Defendant Bleep, LLC ("Bleep") in the Cuyahoga County Court of Common Pleas asserting claims for (1) breach of contract, and (2) enforcement of Molder's and Moldbuilder's Lien Rights pursuant to Ohio Rev. Code §§ 1333.29 through 1333.34.  (Doc. No. 1-1.)  Bleep removed the action to this Court on August 25, 2020 on the basis of diversity jurisdiction.  (Doc. No. 1.)  The parties subsequently filed a Motion for a stay pending non-binding mediation, which the Court granted on September 9, 2020.  (Doc. No. 6.)

After mediation proceedings were unsuccessful, the stay was lifted and Thogus was granted leave to file its First Amended Complaint.  (Doc. Nos. 8-2, 11.)  On December 29, 2020, Bleep filed an Answer and Verified Counterclaims.  (Doc. No. 12.)  Among other things, Bleep asserts a

counterclaim for breach of contract based on Thogus's alleged failure to immediately release Bleep's bailed property.  (*Id.* at ¶¶ 150-166.)  On December 30, 2020, Bleep filed a Motion for Preliminary and Permanent Injunction, in which it seeks an order requiring Thogus to return Bleep's bailed property.  (Doc. No. 15.)  Thogus filed a Brief in Opposition on January 12, 2021, to which Bleep replied.  (Doc. Nos. 18, 19.)

On January 19, 2021, Thogus filed a Motion for Expedited Discovery, in which it sought an order requiring Bleep to respond to Thogus's First Set of Requests for Production of Documents within seven (7) days after service.  (Doc. No. 20.)  The discovery requests at issue consisted of nineteen (19) Requests for Production.  (Doc. No. 24-1.)  These Requests sought an array of documents relating to the parties' underlying breach of contract claims, including (1) "all design specifications" for Bleep's DreamWay and DreamPort products; (2) "all documents that refer and/or relate to" testing of those products; (3) "all customer complaints" for those products from March 2018 to the present; (4) "all Communications" relating to problems, concerns or complaints regarding the Smooth-Bor Hose; (5) "all Documents" relating to inspections performed by Bleep with respect to "any goods manufactured by Thogus;" (6) "all Documents" relating to Bleep's temporary operating procedures, remediation procedures, and risk assessment as referred to in Paragraph 114 of Bleep's Counterclaim; (7) "all Documents" that identify Bleep's sales figures for the DreamWay and DreamPort product from March 11, 2019 through the present; and (8) "all Documents" that identify the portion of sales of those products that involved goods manufactured by Thogus.  (*Id.*)  Bleep opposed the Motion on numerous grounds.  (Doc. No. 24.)

On January 28, 2021, this Court denied Thogus's Motion on the grounds that its discovery requests were overly broad and not narrowly tailored to either of the specific issues raised in Bleep's Motion for Preliminary Injunction, i.e., (1) Bleep's "good faith" basis for disputing Thogus's demand for payment; and/or (2) Bleep's alleged irreparable harm.  (Doc. No. 30.)  On that same date, the Court conducted a Case Management Conference ("CMC"), during which it set a Preliminary Injunction hearing for March 12, 2021.  (Doc. Nos 28, 29.)  The Court also set a discovery deadline of December 31, 2021.  (*Id.*)

On February 18, 2021, Thogus served Subpoenas on fifteen (15) of Bleep's customers.  (Doc. Nos. 32-3 through 32-17.)  The Subpoenas are identical and seek the production of the following twenty (20) categories of documents:

1.     Copies of any and all distributorship agreements with Bleep for the sale of the DreamWay and/or DreamPort products.

2.     Copies of all agreements and/or contracts with Bleep for the sale of DreamWay and/or DreamPort products.

3.     Copies of all design specifications for the DreamWay, including any modifications to the original design specifications.

4.     Copies of all Documents that refer and/or relate to product testing performed on the DreamWay.

5.     Copies of all design specifications for the DreamPort, including any modifications to the original design specifications.

6.     Copies of all Documents that refer and/or relate to product testing performed on the DreamPort.

7.     Copies of any and all Communications regarding design changes to the DreamWay.

8.     Copies of any and all Communications regarding design changes to the DreamPort.

3

9.     Copies of any and all customer complaints regarding the DreamWay from March 1, 2018 through the present.

10.    Copies of any and all customer complaints regarding the DreamPort from March 1, 2018 through the present.

11.    Copies of all Documents that identify the quantity of DreamWay products sold in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

12.    Copies of all Documents that identify the annual sales revenue for the DreamWay in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

13.    Copies of all Documents that identify the quantity of DreamPort products sold in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

14.    Copies of all Documents that identify the annual sales revenue for the DreamPort in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

15.    Copies of all Documents that refer and/or relate to the most recent, modified version of the DreamWay (the "NextGen DreamWay").

16.    Copies of all Documents that identify the quantity of the NextGen DreamWay products sold in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

17.    Copies of all records that identify the annual sales revenue for the NextGen DreamWay for calendar years 2019, 2020, and 2021 (year to date), respectively.

18.    Copies of all Documents that refer and/or relate to the most recent, modified version of the DreamPort (the "NextGen DreamPort").

19.    Copies of all Documents that identify the quantity of the NextGen DreamPort products sold in calendar years 2018, 2019, 2020, and 2021 (year to date), respectively.

20.    Copies of all records that identify the annual sales revenue for the NextGen DreamPort for calendar years 2019, 2020, and 2021 (year to date), respectively.

4

*See, e.g.,* Doc. No. 32-3 at PageID#s 546-547.  The Subpoenas command the recipients to produce responsive documents to Thogus's counsel in downtown Cleveland by March 8, 2021; i.e., four days prior to the Preliminary Injunction Hearing.  (Doc. Nos. 32-3 through 32-17.)  The Subpoena recipients are located across the United States in North Carolina, Texas, Washington, New Hampshire, Illinois, Arizona, Florida, and New Jersey.  (*Id.*)  One of the Subpoena recipients is located in Maineville, Ohio, which is approximately 225 miles from downtown Cleveland.  (Doc. No. 32-3.)

On February 19, 2021, counsel for Bleep conferred with counsel for Thogus and requested that Thogus withdraw the Subpoenas.  (Doc. No. 32-1 at pp. 4-5.)  Thogus refused to do so.  (*Id.*)

On February 22, 2021, Bleep filed a Motion to Quash the Subpoenas or, in the alternative, for a Protective Order.  (Doc. No. 32.)  Thogus filed a Brief in Opposition on February 26, 2021, to which Bleep replied on March 2, 2021.[1]  (Doc. Nos. 36, 37.)

## II.      Legal Standard

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...."  Fed. R. Civ. P. 26(b)(1).  "Relevance is construed very broadly for discovery purposes."  *Doe v. Ohio State Univ.*, 2018 WL 1373868 at *2 (S.D. Ohio Mar. 19, 2018) (citations omitted)).  The concept of relevance, however, is not unlimited.  *Averett v. Honda of Am. Mfg., Inc.*, 2009 WL 799638 at *2 (S.D. Ohio March 24, 2009)  While a plaintiff should "not be denied access to information necessary to establish her claim," a plaintiff may not be "permitted to 'go fishing' and

---

[1] Meanwhile, on February 24, 2021, the parties filed a Joint Stipulated Protective Order, which was entered the next day. (Doc. Nos. 33, 34.)

5

a trial court retains discretion to determine that a discovery request is too broad and oppressive." *In re Ohio Execution Protocol Litigation*, 845 F.3d 231, 236 (6th Cir. 2016) (quoting *Surles v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007)).  *See also Gallagher v. Anthony*, 2016 WL 2997599 at *1 (N.D. Ohio May 24, 2016) ("[D]istrict courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce.").

Several specific discovery rules are relevant to the instant Motion.  Rule 45 of the Federal Rules of Civil Procedure governs third-party subpoenas.  Under Rule 45(a), parties may command a nonparty to, among other things, testify in deposition and/or produce documents.  Fed. R. Civ. P. 45(a)(1).  Rule 45(c)(2) provides that "[a] subpoena may command . . . production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person."  Fed. R. Civ. P. 45(c)(2).  Rule 45(d)(3)(A) further provides that the issuing court "must quash or modify a subpoena that (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c)(2); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iii)-(iv).  In addition, a court may quash or modify a subpoena that requires the disclosure of a trade secret or other confidential research, development, or commercial information.  Fed. R. Civ. P. 45(d)(3)(B).  *See United States v. Tenn. Walking Horse Breeders' and Exhibitors Ass'n*, 727 Fed. Appx 119, 123 (6th Cir. 2018) ("A court must protect a non-party subject to a subpoena if it

'requires disclosure of privileged or other protected matter' or the subpoena 'subjects a person to undue burden.'") (quoting Fed. R. Civ. P. 45(d)(3)(A)(iii-iv)).[2]

Rule 26(c) governs protective orders. That Rule authorizes the Court "for good cause shown" to issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236 (internal citation omitted). "[W]here a party's standing may fall short to quash a subpoena under Rule 45, Rule 26(c) affords parties the ability to move for a protective order on a third party's behalf." *Diamond Resorts Int'l, Inc. v. Phillips*, 2018 WL 4328257 at *2 (M.D. Tenn. July 16, 2018). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. Appx. 498, 500 (6th Cir. 2001) (citation omitted).

"District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sol., Inc.,* 901 F.3d 619, 642 (6th Cir. 2018) (citation omitted). Indeed, "'[i]t is well established that the scope of discovery is within the sound discretion of the trial court.'" *Id.* (quoting *Lavado v. Keohane*, 992 F.2d 601, 604 (6th Cir. 1993)).

## III.    Analysis

In its Motion, Bleep asks the Court to either quash the Subpoenas or, in the alternative, issue a Protective Order pursuant to Rule 26(c). (Doc. No. 32-1.) Bleep first maintains that good cause

---

[2] Courts "have held that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26." *Hendricks v. Total Quality Logistics*, 275 F.R.D. 251, 253 (S.D. Ohio 2011) (citation omitted). Under that Rule, district courts may take into account "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). "Courts must 'balance the need for discovery against the burden imposed on the person ordered to produce documents,' and the status of that person as a non-party is a factor." *In re: Modern Plastics Corp.*, 890 F.3d 244, 251 (6th Cir. 2018) (quoting *Am. Elec. Power Co. v. United States*, 191 F.R.D. 132, 136 (S.D. Ohio 1999)).

for its Motion exists because the Subpoenas improperly seek to circumvent this Court's January 28, 2021 Order denying expedited discovery.  (*Id.* at p. 6.)  In support, Bleep notes that the Subpoenas largely seek the very same documents and information that Thogus unsuccessfully sought to obtain from Bleep in its Motion for Expedited Discovery.  (*Id.* at p. 3.)  Bleep further asserts that it is no coincidence that Thogus served the Subpoenas with a response date of March 8, 2021, which is four (4) days prior to the hearing on Bleep's Motion for Preliminary Injunction.  (*Id.*)

Bleep next argues that the true intent of the Subpoenas is to "oppress and harm Bleep and to annoy and unduly burden Bleep and its customers."  (*Id.*)  Bleep states that the 15 Subpoena recipients are its customers, i.e., they are entities to which Bleep sells its products.  (Doc. No. 37 at p. 4.)  Bleep maintains that the 15 Subpoena recipients herein "collectively account for nearly all of Bleep's sales." (*Id.*)  Bleep argues that Thogus's "real motive" in issuing these Subpoenas is to "damage Bleep's reputation and goodwill in the industry by alerting customers to this litigation."  (Doc. No. 32-1 at p. 7.)  Bleep asserts that Thogus has no need to subpoena these entities at this time and that it will have an opportunity during the normal course of discovery to obtain the requested information directly from Bleep.  (*Id.*)

Finally, Bleep argues that the Subpoenas are procedurally improper because all 15 of the Subpoenas direct the recipient to produce documents and ESI at the office of counsel for Thogus in Cleveland, Ohio.  (*Id.*)  Because none of the 15 Subpoena recipients are located within 100 miles of Cleveland, Bleep argues the Subpoenas are procedurally defective pursuant to Rule 45(c)(2).  (*Id.*)

In response, Thogus argues that Bleep lacks standing to challenge the Subpoenas because it has failed to "assert any legally-recognized privilege" in the information sought.  (Doc. No. 36 at p. 5.)  Thogus maintains that the Subpoenas are not an attempt to circumvent this Courts' "expedited

discovery restrictions" but, rather, is simply a part of Thogus's general discovery efforts in this litigation. (*Id.*) Thogus further asserts that Bleep's "feigned outrage" is undermined by the fact that Bleep did not challenge two other subpoenas issued by Thogus in early February to Bleep's "vendors," Virtec Enterprises, LLC ("Virtec") and Smooth-Bor Plastics ("Smooth-Bor"). (*Id.* at p. 5.) Thogus disputes Bleep's characterization of the 15 Subpoena recipients as "customers," arguing that the recipients are "distributors and retailers of Bleep's products that merely serve as locations for end-user customers to purchase Bleep's products." (*Id.* at p. 6.) In this sense, Thogus argues, the Subpoena recipients are analogous to Virtec and Smooth-Bor, whose subpoenas were not challenged by Bleep. (*Id.*)

Thogus next argues that the Subpoenas do not annoy, embarrass, oppress, or impose an undue burden on the Subpoena recipients. (*Id.* at p. 7.) Thogus maintains the Subpoenas are more narrowly tailored than its previous expedited discovery requests to Bleep, noting that they do not seek information regarding the purported durability of product components and/or Bleep's "lack of testing and design engineering." (*Id.* at p. 8.) Finally, Thogus asserts that the Subpoenas are not procedurally improper because "[c]ourts generally find that Federal Civil Rule 45(c)(2)(A) does not apply where documents can be mailed and do not require personal attendance." (*Id.*)

The Court first addresses the issue of standing. "Ordinarily a party has no standing to seek to quash a subpoena issued to someone who is not a party to the action, unless the objecting party claims some personal right or privilege with regard to the documents sought." *Diamond Resorts Int'l, Inc.*, 2018 WL 4328257 at *2 (quoting 9A Charles Alan Wright and Arthur R. Miller, et al., Federal Practice and Procedure § 2549 (3d ed.)). *See also White Mule Co. v. ATC Leasing Co., LLC*, 2008 WL 2680273 at *4 (N.D. Ohio June 25, 2008) ("In the absence of a claim of privilege, propriety

interest, or personal interest, a party has no standing to quash a subpoena directed at a non-party.")
(internal citations omitted).  "The only basis upon which a party could have standing to quash a non-party subpoena would be a claim or personal right or privilege."  *Waite, Schneider, Bayless & Chesley Co. L.P.A. v. Davis*, 2013 WL 146362 at * 5 (S.D. Ohio Jan 14, 2013).

However, courts have found that parties may have standing to seek a *protective order* under Rule 26(c) to preclude discovery though subpoenas issued to third parties.  *See White Mule Co., LLC*, 2008 WL 2680273 at * 2; *U.S. v. Operation Rescue*, 112 F.Supp.2d 696, 705 (S.D. Ohio 1999) ("As Plaintiff properly notes, several other federal courts have found that a party has standing to seek a protective order on behalf of non-parties.")  *See also Focus Health Group v. Stamps*, 2020 WL 7774906 at * 2 (E.D. Tenn. Dec. 30, 2020); *Em v. Pyramyd Air, Ltd*, 2010 WL 11681435 at * 1 (N.D. Ohio Sept. 10, 2010).  As noted above, such an order is generally available under Rule 26(c) on a showing of good cause; i.e, a showing that "specific prejudice or harm will result" from the absence of a protective order.  *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236.

For the following reasons, the Court finds that Bleep has demonstrated good cause for the issuance of protective order under Rule 26(c).  As an initial matter, the Court agrees that the Subpoenas at issue improperly attempt to circumvent this Court's January 28, 2021 Order denying expedited discovery.  As Bleep correctly notes, in many respects, Thogus's First Set of Discovery Requests and the Subpoenas seek the same documents and information.  Both seek design specifications for the DreamWay and DreamPort Products (including any design changes or modifications), and both seek documents relating to product testing performed on these products. (Doc. No. 32-2 at PageID# 537-538; Doc. No. 32-3 at PageID# 546.)  In addition, both the Discovery Requests and Subpoenas seek documents relating to customer complaints regarding the DreamWay

10

and DreamPort products from March 2018 to the present.  (*Id.*)  Both also seek sales figures for the DreamWay and DreamPort products for the past several years.  (*Id.*)  In sum, while there are some differences between the Discovery Requests and Subpoenas,[3] the Court finds that, in large measure, they seek production of the same universe of documents and information.

Moreover, both the expedited Discovery Requests and the Subpoenas sought to obtain these documents prior to the Preliminary Injunction Hearing.  Specifically, as noted above, the Subpoenas (issued on February 18, 2021) asked the recipients to produce the requested documents by March 8, 2021, four days prior to the hearing.  Although not raised by Bleep, the Court has some concern regarding whether this is a reasonable time for compliance,[4] particularly in light of the fact that the Subpoenas broadly request the production of 20 separate categories of documents.  In addition, the Court notes that Subpoenas command the recipients to mail the documents to Thogus's counsel in downtown Cleveland.  Given that the majority of the Subpoena recipients are located out of State (and in light of recent postal delays), the recipients would likely have to assemble the requested documents and mail them several days prior to the March 8, 2021 deadline.  Thogus offers no explanation for this compressed time frame, asserting generally that it is simply conducting "general discovery" in this litigation.  The Court is not persuaded.  To the contrary, the Court finds, in light of the above, that the Subpoenas at issue are nothing more than an end run around this Court's January 28, 2021 Order under the guise of "general discovery."

---

[3] The Subpoena also contains five requests for documents relating to the "NextGen DreamWay" and "Next Gen DreamPort" products.  (Doc. No. 32-3 at ¶¶ 15-20.)  In its Motion, Bleep states that these "NextGen" products do not exist.  *See* Doc. No. 32-1 at p. 4, fn 2.

[4] As the Subpoena was issued on February 18, 2021 and requested documents by March 8, 2021, the time for compliance was 18 days.

The Court also finds that the Subpoenas at issue are intended to harass and embarrass Bleep. It is quite clear to this Court that the 15 Subpoena recipients are Bleep's customers.  As Bleep explains in its Reply Brief:

> All 15 of the subpoenaed parties are entities to which Bleep sells its products, and all 15 of the subpoenaed parties purchase products from Bleep. Each of the 15 subpoenaed entities decides whether to carry and offer to consumers Bleep's CPAP products versus products offered by Bleep's competitors. Therefore, each of the 15 subpoenaed entities, which collectively account for nearly all of Bleep's sales, have influence over which CPAP products, be it from Bleep or one of Bleep's competitors, are ultimately used by an individual consumer.

(Doc. No. 37 at p. 4.)  Thogus's argument that the Subpoena recipients "merely serve as locations for end-user customers to purchase Bleep's products" is disingenuous and entirely without merit.  As each of the Subpoena recipients purchase Bleep's products, the Court finds that they are Bleep's "customers" for purposes of the instant Motion.[5]

Thus, in issuing the instant Subpoenas, Thogus targeted Bleep's client base, alerting nearly all of Bleep's customers to the instant lawsuit and demanding compliance with a broad array of document requests on an expedited basis.  Thogus offers no explanation for the expedited and onerous nature of these Subpoenas, nor does it explain why it felt compelled to seek the requested documents from Bleep's customers rather than simply obtaining them from Bleep itself through the normal course of discovery.  As noted above, the discovery deadline in this matter does not expire until

---

[5] The Court is also not persuaded by Thogus's argument that Bleep somehow waived its right to challenge the instant Subpoenas because it failed to object to Thogus's subpoenas to Virtec and Smooth-Bor.  Neither of these entities are "customers" of Bleep.  Rather, Virtec provided engineering and quality assurance services to Bleep, while Smooth-Bor is a former supplier of Bleep's products.  In short, Bleep purchased goods and services from Virtec and Smooth-Bor, not the other way around.  The Court agrees with Bleep that "the same harm does not result from the Subpoenas served on Virtec and Smooth-Bor as from the Subpoenas served on Bleep's customers, which place those customer relationships directly at risk." (Doc. No. 37 at pp. 4-5.)  In any event, it is simply immaterial that Bleep failed to challenge the Virtec and Smooth-Bor subpoenas.  A party is not required to challenge every single Subpoena issued over the course of discovery in order to preserve a challenge to any one of them.

12

December 31, 2021, leaving ample time for Thogus to properly obtain the requested documents and information from Bleep.  In light of the haste, breadth, and timing of Thogus's Subpoenas, the Court finds that the Subpoenas were principally issued for the twin purposes of (1) obtaining expedited discovery in violation of this Court's January 28, 2021 Order; and (2) embarrassing and annoying Bleep by targeting its customer base. [6]

Accordingly, the Court finds that a protective order is necessary to protect Bleep from harassment and potential damage to its reputation and goodwill.  The Court, therefore, directs Thogus to withdraw the 15 Subpoenas at issue, immediately upon receipt of this Order.  Bleep is also permitted to notify the Subpoena recipients that the Subpoenas should be disregarded pursuant to this Court's Order.  In the event that Thogus has already received documents from any of the Subpoena recipients in response to its Subpoenas, it is prohibited from relying on or introducing such documents in connection with the upcoming Preliminary Injunction hearing.  Finally, it is further ordered that Thogus is prohibited from serving any additional Subpoenas on the 15 recipients at issue herein unless and until Thogus demonstrates that it has been unable to obtain the desired information directly from Bleep during the normal course of discovery.

## IV.    Conclusion

For all the foregoing reasons, Defendant Bleep, LLC's Motion to Quash or, in the Alternative, for Protective Order (Doc. No. 32) is GRANTED as set forth herein.  Thogus is hereby ordered to withdraw the 15 Subpoenas at issue, immediately upon receipt of this Order.  In the event that Thogus has already received documents from any of the Subpoena recipients in response to its Subpoenas, it

---

[6] While none of the Subpoena recipients have filed Motions to Quash, Bleep indicates that "Bleep's customers have responded negatively to the Subpoenas – by calling Bleep and inquiring into the nature and scope of the lawsuit."  (Doc. No. 37 at p. 5, fn 2.)

is prohibited from relying on or introducing such documents in connection with the upcoming Preliminary Injunction hearing.  Finally, it is further ordered that Thogus is prohibited from serving any additional Subpoenas on the 15 recipients at issue herein unless and until Thogus demonstrates that it has been unable to obtain the desired information directly from Bleep during the normal course of discovery.

**IT IS SO ORDERED.**


_s/Pamela A. Barker_
PAMELA A. BARKER
Date:  March 4, 2021                                    U. S. DISTRICT JUDGE

14