IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| **THOGUS PRODUCTS COMPANY,** | CASE NO. 1:20-cv-1887 |
| **Plaintiff,** | |
| -vs- | JUDGE PAMELA A. BARKER |
| **BLEEP, LLC,** | |
| | MEMORANDUM OF OPINION AND |
| **Defendant.** | ORDER |

Currently pending is Plaintiff Thogus Products Company's Motion to Dismiss Count VI of Defendant Bleep, LLC's Counterclaim. (Doc. No. 21.) Defendant Bleep, LLC filed a Brief in Opposition on February 19, 2021, to which Plaintiff replied on February 26, 2021. (Doc. Nos. 31, 35.) For the following reasons, Plaintiff's Motion to Dismiss is granted.

**I.  Background**

Defendant Bleep, LLC (hereinafter "Bleep") develops and sells certain medical devices for the treatment of sleep apnea, including the DreamWay and DreamPort products. (Doc. No. 12, ¶ 8.) Both products are designed to work with continuous positive airway pressure ("CPAP") machines and are finished medical devices under applicable federal law and regulations promulgated by the United States Food & Drug Administration ("FDA"). (*Id.* at ¶ 8, 11.)

While researching potential manufacturers for the DreamWay and DreamPort, Bleep learned that Plaintiff Thogus Products Company ("Thogus") was interested in becoming a contract manufacturer of finished medical devices. (*Id.* at ¶ 12.) Although Thogus only manufactured medical device components at the time the two companies entered negotiations, Thogus expressed a desire to Bleep in becoming a finished medical devices manufacturer. (*Id.* at ¶ 13.)

Between late 2017 and early 2018, Thogus and Bleep entered into negotiations for an agreement whereby Thogus would manufacture Bleep's DreamWay and DreamPort products. (*Id.* at ¶¶ 12-22.) Bleep claims that, during these negotiations, Thogus represented that it either was already in compliance with, or would achieve compliance with, manufacturing and regulatory compliance standards for a "finished medical device" manufacturer under the FDA. (*Id.* at ¶¶ 16-22.) In addition, Bleep alleges that Thogus represented that it would be able to satisfy Bleep's specifications and quality standards for the DreamWay and DreamPort products. (*Id.*)

Bleep alleges that, in entering a manufacturing contract with Thogus, it relied on what it purports were Thogus's false representations and assurances with respect to Thogus's ability and intent to establish manufacturing operations that complied with medical device regulations. (*Id.* at ¶ 25.) On March 2, 2018, Bleep and Thogus entered into a Manufacturing Supply Agreement ("MSA") for the manufacture of the DreamWay and DreamPort products. (*Id.* at ¶¶ 28-29.) Of particular relevance herein, Section 17.15 of MSA contains the following choice of law provision:

> 17.15 <u>Governing Law</u>. This Agreement, including all exhibits, schedules, attachments and appendices attached hereto and thereto, are governed by, and construed in accordance with, the Laws of the State of Ohio, United States of America, without regard to the conflict of laws provisions thereof.

(Doc. No. 12-2, PageID# 317.)

On December 29, 2020, Bleep filed its Answer to Thogus's Complaint, as well as its Verified Counterclaims. (Doc. No. 12.) In Count VI of its Counterclaims, Bleep asserts that Thogus's conduct constituted unfair or deceptive trade practices in violation of North Carolina's Unfair and Deceptive Trade Practices Act ("NC UDTPA"). (*Id.* at ¶¶ 194-99.) Thogus moves to dismiss Count VI, the NC UDTPA claim, only. (Doc. No. 21.)

2

## II. Standard of Review

Thogus moves to dismiss Bleep's Count VI for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Under Fed. R. Civ. P. 12(b)(6), the Court accepts the plaintiff's factual allegations as true and construes the Complaint in the light most favorable to the plaintiff. *See Gunasekara v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009). In order to survive a motion to dismiss under this Rule, "a complaint must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting in part *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The measure of a Rule 12(b)(6) challenge—whether the Complaint raises a right to relief above the speculative level—"does not 'require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.'" *Bassett v. National Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (quoting in part *Twombly*, 550 U.S. at 555-56, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). Deciding whether a complaint states a claim for relief that is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

Consequently, examination of a complaint for a plausible claim for relief is undertaken in conjunction with the "well-established principle that 'Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific

facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Gunasekera*, 551 F.3d at 466 (quoting in part *Erickson v. Pardus*, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007)) (quoting *Twombly,* 127 S.Ct. at 1964). Nonetheless, while "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.

### III.  Analysis

Thogus asserts that Bleep's Count VI should be dismissed because the MSA's clear and unambiguous choice of law provision precludes Bleep from seeking relief under North Carolina law. (Doc. No. 21-2, PageID# 421-22.) Bleep contends that North Carolina law applies because the MSA's choice of law provision governs only contract claims, not tort claims like Bleep's unfair trade practices claim in Count VI. (Doc. No. 31, PageID# 505-06.) For the following reasons, the Court concludes that Ohio law governs and, therefore, Bleep's Count VI should be dismissed.

A court exercising diversity jurisdiction must apply the choice-of-law rules of the forum state. *Glenway Indus., Inc. v. Wheelabrator-Frye, Inc.*, 686 F.2d 415, 417 (6th Cir. 1982). Therefore, Ohio's choice of law rules apply. The Ohio Supreme Court has adopted the Restatement (Second) of Conflict of Laws, which provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the

state of the applicable law in the absence of an effective choice of law by the parties. *Tele-Save Merch. Co. v. Consumers Distrib. Co., Ltd.*, 814 F.2d 1120, 1122 (6th Cir. 1987) (quoting *Schulke Radio Prods., Ltd. v. Midwestern Broad. Co.*, 453 N.E.2d 683 (Ohio 1983)). "[C]ontractual choice-of-law provisions are valid and enforceable" under Ohio law. *CajunLand Pizza, LLC v. Marco's Franchising, LLC*, --- F. Supp. 3d ---, 2021 WL 149867, at *3 (N.D. Ohio Jan. 15, 2021) (quoting *Miami Valley Mobile Health Servs., Inc. v. ExamOne Worldwide, Inc.*, 852 F. Supp. 2d 925, 932 (S.D. Ohio 2012)). Further, "[t]he Sixth Circuit has held repeatedly that contractual choice of law provisions apply to tort claims that are closely related to the contractual relationship, as opposed to those that are only tangentially related." *Id.* (citing *Adelman's Truck Parts Corp. v. Jones Transp.*, 797 F. App'x 997, 1000 (6th Cir. 2020); *Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993); *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1139-40 (6th Cir. 1991); *Baumgardner v. Bimbo Food Bakeries Distribution, Inc.*, 697 F. Supp. 2d 801 (N.D. Ohio 2010)); *CajunLand Pizza, LLC*, 2021 WL 149867, at *3.

In *Adelman*, the Sixth Circuit affirmed the dismissal of a counterclaimant's NC UDTPA claim because the claim was barred by the contract's choice-of-law provision. *Adelman*, 797 Fed. App'x at 1000-01. The Sixth Circuit rejected the counterclaimant's argument that his NC UDTPA claim was "more like a tort claim than a contract claim," and therefore, "the contractual choice-of-law provision does not cover his claim." *Id.* The court concluded that such an argument was foreclosed by the Sixth Circuit's decision in *Moses v. Business Card Exp., Inc.*, 929 F.3d 1131 (6th Cir. 1991):

> [In *Moses*], a party that sought to avoid a contract argued that its fraud and misrepresentation claims were not covered by a contractual choice-of-law provision that read, "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan." *Id.* at 1139. We held that the fraud and misrepresentation claims were indeed covered by that language. *Id.* at 1140.

5

> We find no legally significant difference between the choice-of-law clause here and the choice-of-law clause in *Moses*. Here, as there, the clause clearly "refers to more than construction of the agreement; otherwise the first six words would be surplusage." *Id.* at 1139-40. Just as in *Moses*, the choice-of-law clause here governs the agreement and any disputes, whether contractual or tortious, that are directly related to it. *See Banek Inc. v. Yogurt Ventures U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) (holding that a choice-of-law provision was sufficiently broad to cover the plaintiff's claims for fraud and misrepresentation that were "directly related to" the contract). Because Jones's NC UDTPA claim arose out of and is directly related to the Purchase Agreement, it is barred by the Purchase Agreement's choice-of-law clause.

*Id.* at 1001.

Here, Bleep's NC UDTPA claim is closely related to the underlying negotiation and performance of the MSA. (*See* Doc. No. 12, ¶ 196.)  Therefore, the Court concludes that this claim is subject to the parties' choice of law provision, and as a result, Ohio law applies.  Accordingly, the MSA bars Bleep's NC UDTPA claim and it must be dismissed.

Bleep's argument that *Adelman* is inapposite and wrongly decided is not persuasive. (Doc. No. 31, PageID# 510.)  First, the MSA's choice of law provision at issue here is nearly identical to the *Adelman* choice of law provision.  The instant choice of law provision provides that the agreement and all related exhibits "are **governed by, and construed in accordance with, the Laws of the State of Ohio**," while the *Adelman* choice of law provision provides that the contract "**shall be governed by and construed in accordance with the laws of the State of Ohio**."  *Compare* Doc. No. 12-2, PageID# 317, *with Adelman*, 797 Fed. App'x at 1000 (emphasis added).  Moreover, the counterclaimant in *Adelman* also brought an NC UDTPA claim related to conduct surrounding the negotiation and formation of a contract.  *Adelman*, 797 Fed. App'x at 999.  These provisions are virtually identical, as is the factual context in which each is implicated.  Thus, the Court concludes that, just as in *Adelman*, the MSA's choice of law provision governs the contract, as well as any disputes—contractual or tortious—directly related to it.  *Id.* at 1001.

Second, the Court disagrees that *Adelman* failed to correctly apply substantive Ohio law. (Doc. No. 31, PageID# 513.) Contrary to Bleep's position, there is no significant difference between the choice of law provision in *Adelman* and the choice of law provision in *Moses* simply because each provision applied the substantive laws of different states. (*Id.*) *Adelman* applied well-established Sixth Circuit precedent and Ohio's conflict of laws rules in determining that the counterclaimant's tortious NC UDTPA claim fell within the scope of the contract's choice of law provision and, accordingly, applied Ohio law. *Adelman*, 797 Fed. App'x at 1001 (citing *Moses*, 929 F.2d at 1139). The Court disagrees with Bleep's argument that under Ohio law,[1] the MSA's choice of law provision presents no bar to a tort claim under North Carolina law. (Doc. No. 31, PageID# 512-13.) While Bleep's NC UDTPA claim sounds in tort—just as the claims in *Adelman* and *Moses* did—the question is whether the scope of the parties' contractual choice of law provision is broad enough to encompass tort claims that arise directly from the MSA. *See Masco Cabinetry Middlefield, LLC v. Cefla N.A., Inc.*, 637 Fed. App'x 192, 196 (6th Cir. 2015) (concluding that, while the plaintiff's claims sounded in tort, they stemmed from the preexisting contractual relationship and were thus "properly classified, under Ohio's choice-of-law rules, as arising out of the contract"). The Sixth Circuit is abundantly clear that broadly worded choice of law provisions, such as those in *Adelman* and *Moses*, encompass tort claims that arise directly from the making and performance of the contract. *See Adelman*, 797 Fed. App'x at 1001; *Moses*, 929 F.2d at 1139; *Banek Inc. v. Yogurt Ventures*

---

[1] Moreover, Bleep's cited cases, *Bentley v. Equity Trust* and *Isaac v. Alabanza Corp.*, are inapposite. (Doc. No. 31, PageID# 512-13.) In *Bentley*, the Ohio Court of Appeals concluded that investors' fraud claims fell outside of the scope of the contracts because at the time the parties entered into the contracts, neither could have contemplated that the defendant corporation would have perpetrated a fraudulent Ponzi scheme, as such an agreement would violate public policy. *Bentley v. Equity Trust*, 2015 WL 7254796, at *3-4 (Ohio 9th Dist. Ct. App. Nov. 16, 2015). In *Isaac*, the plaintiff's fraud and negligent misrepresentation claims arose from conduct related to an employment application agreement that did not include a choice of law provision. *Isaac v. Alabanza Corp.*, 2007 WL 901596, at *7-8 (Ohio 7th Dist. Ct. App. Mar. 22, 2007).

*U.S.A., Inc.*, 6 F.3d 357, 363 (6th Cir. 1993) (concluding that a choice of law provision that read "[t]his Agreement was made and entered into in the State [of] Georgia and all rights and obligations of the parties hereto shall be governed by and construed in accordance with the laws of the State of Georgia" was sufficiently broad so as to cover the plaintiff's fraud and misrepresentation claims). *See also Baumgardner*, 697 F. Supp. 2d at 804 (concluding that a choice of law provision that read "[t]he validity, interpretation and performance of this Agreement shall be controlled by and construed in accordance with the laws of New York" was sufficiently broad so as to cover the plaintiff's contract, tort, and quasi-contract claims); *Jewell Coke Co., L.P. v. ArcelorMittal USA, Inc.*, No. 1:10-cv-01946, 2010 WL 4628756, at *7 (concluding that a choice of law provision that read "[t]his guaranty and the rights and obligations of Haverhill, Jewell and Guarantor shall be governed by and construed in accordance with the law of the State of New York" was sufficiently broad so as to cover the plaintiff's negligent misrepresentation claim).  Here, the MSA's choice of law provision contains similar broad language that encompasses tort claims directly related to the MSA within its scope. Therefore, the Court concludes that Bleep's NC UDTPA claim is barred by the MSA's choice of law provision.

### IV.     Conclusion

Accordingly, for the reasons set forth above, Thogus's Motion to Dismiss Count VI is GRANTED.

**IT IS SO ORDERED.**

                                                     *s/Pamela A. Barker*
                                                    PAMELA A. BARKER
Date:  June 4, 2021                       U. S. DISTRICT JUDGE